UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA          *     Case No. 14-CR-00575 (RJD)
                                  *
                                  *     Brooklyn, New York
                                  *     March 17, 2015
        v.                        *
                                  *
FAUSTO BONIFAZ,                   *
                                  *
              Defendant.          *
                                  *
    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

             TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
               BEFORE THE HONORABLE STEVEN M. GOLD
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          TIANA DEMAS, ESQ.
                             Asst. United States Attorney
                             United States Attorney's Office
                             271 Cadman Plaza East
                             Brooklyn, NY 11201

For the Defendant:           JEFFERY L. GRECO, ESQ.
                             Greco Neyland, PC
                             261 Madison Avenue
                             New York, NY  10016

                             DANIEL DE MARIA, ESQ.
                             Merchant Law Group LLP
                             203 East Post Road
                             White Plains, NY  10601

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 2:29 p.m.)

2               THE CLERK:  The Honorable Steven M. Gold presiding.

3     Criminal cause for guilty plea, *United States of America*

4     *versus Fausto Bonifaz*, Docket No. 14-CR-575 RJD.  Counsel,

5     please say your appearances for the record.

6               MS. DEMAS:  Good afternoon, Your Honor.  Tiana

7     Demas for the government.

8               THE COURT:  Ms. Demas.

9               MR. GRECO:  Good afternoon, Judge.  Jeff Greco, G-

10    r-e-c-o, for Mr. Bonifaz.

11              MR. DE MARIA:  And Daniel DeMaria, Your Honor, for

12    Mr. Bonifaz.

13              THE COURT:  All right.  Have a seat.  Do I see an

14    executed copy of the -- the original plea agreement?

15              MR. GRECO:  Yes, Your Honor.

16              THE COURT:  Can you hand it up, please?

17              MR. GRECO:  Yes, Your Honor.

18              THE COURT:  Thank you.  I take it this is the same

19    document that the government has previously forwarded to me?

20              MS. DEMAS:  Yes, Your Honor.  It is.

21              THE COURT:  Thank you.  Mr. Bonifaz, do you speak

22    and understand English?

23              THE DEFENDANT:  Yes, I do, sir.

24              THE COURT:  He can -- he can remain seated, but I'd

25    like you to pull the microphone in front of him.  A little

3

1    closer to him, Mr. Greco.  Thank you.

2         MR. GRECO:  Yes, Your Honor.

3         THE COURT:  Mr. Bonifaz, the reason you're in my

4    courtroom today is that your lawyer indicates that you wish

5    to surrender your right to trial and that -- and you instead

6    want to enter a plea of guilty pursuant to the terms of a

7    written plea agreement you've entered into with the

8    prosecution.

9         Before I may hear any plea of guilty that you

10   choose to offer, I need to make sure that you understand that

11   I'm not the judge who is presiding over your case.  The judge

12   presiding over your case is United States District Judge

13   Dearie.  Maybe you've had the opportunity to appear before

14   Judge Dearie at an earlier stage of your case.  Judge --

15        THE DEFENDANT:  I believe once, Your Honor.

16        THE COURT:  Judge Dearie is the one who is going to

17   decide whether any plea of guilty you do decide to offer

18   today should be accepted, and if it is, how your sentence

19   should be determined.

20        If you wish, you have the absolute right to present

21   any guilty plea you want to make to Judge Dearie instead of

22   to me.  If that's your preference, there will be no prejudice

23   to you.  You will be permitted to enter your guilty plea in

24   front of Judge Dearie on another day that is convenient to

25   His Honor.

4

1          In the alternative though, although I'm not

2     authorized by law as a magistrate judge to formally accept

3     your plea of guilty, I do have the authority to be the judge

4     who hears your guilty plea.

5          And if you make that choice, I will arrange for

6     this entire proceeding to be recorded and transcribed so that

7     Judge Dearie has a complete written record of everything you

8     and I have said to each other before he is called upon to

9     decide whether to accept your plea or what your sentence

10    should be.

11         So you could either decide to go in front of Judge

12    Dearie on another day with no prejudice to you, same terms

13    and conditions you're being offered now on another day

14    convenient to Judge Dearie, or you could present your guilty

15    plea to me.

16         I cannot formally accept it, because I'm not a

17    district judge like Judge Dearie, but I'll create a

18    transcript of everything that was said and that transcript

19    will be reviewed by Judge Dearie.

20         Do you understand everything I've said?

21         THE DEFENDANT:  Yes, I do, Your Honor.

22         THE COURT:  Do you want to give up your right to

23    have Judge Dearie be the judge who listens to you plead

24    guilty and do you agree to present your guilty plea instead

25    to me?

5

1          THE DEFENDANT:  Yes, I do, Your Honor.

2          THE COURT:  Are you making this decision

3     voluntarily and of your own free will?

4          THE DEFENDANT:  Yes, I am.

5          THE COURT:  Have you been threatened or pressured

6     or promised anything in order to get you to agree to this?

7          THE DEFENDANT:  No, I have not.

8          THE COURT:  Can you see this consent form from

9     where you are sitting?

10          THE DEFENDANT:  Yes, I can.

11          THE COURT:  Did you read this form and review it

12     carefully with your attorneys and then sign it?

13          THE DEFENDANT:  Yes, I did.

14          THE COURT:  Do you have any questions about it?

15          THE DEFENDANT:  I do not.

16          THE COURT:  Mr. Greco, will you be the one up --

17     speaking to the Court on behalf of your client today?

18          MR. GRECO:  Yes, Your Honor.

19          THE COURT:  Do you know of any reason why your

20     client should not consent to proceed before me?

21          MR. GRECO:  No, I do not, Judge.

22          THE COURT:  Ms. Demas, my reading of the indictment

23     suggests that there is a real victim to this crime.  Has

24     appropriate victim notification of today's proceeding been

25     made?

6

1          MS. DEMAS:  Yes, Your Honor.  Victim notification

2     has actually been made to three victims.

3          THE COURT:  Thank you.  Just one second, please.

4          (Pause.)

5          THE COURT:  Mr. Bonifaz, before I may recommend

6     that Judge Dearie accept any plea of guilty you choose to

7     offer today, I have to ask you a very long series of

8     questions.

9          THE DEFENDANT:  Understood.

10          THE COURT:  The questions are very important.

11     They're designed to make sure that you understand what a

12     serious decision you're about to make.  They are also

13     designed to create a record that will protect the prosecution

14     and the Court, because that record will demonstrate that I

15     explained your rights to you, you acknowledged that you

16     understood what your rights were, and you agreed voluntarily

17     to surrender them.

18          It's, therefore, very important that you listen

19     carefully to my questions and don't just answer them without

20     understanding them to get this over with.  If I ask you

21     anything and you're not sure what I mean, just stop me and

22     tell me, and I will try to ask it again and make it clearer.

23          If you want to interrupt me for any reason during

24     this proceeding -- maybe you want to ask me a question, maybe

25     you want to talk privately with your attorney, it's fine.

7

1    Just go ahead and I'll give you the opportunity to either ask

2    your question of me or to speak privately with your lawyer.

3              THE DEFENDANT:  I will.  Thank you.

4              THE COURT:  Do you understand that?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  It's so important you tell the truth

7    today that I'm going to direct that you be placed under oath

8    before we proceed.  So now you have to rise.

9         (The defendant is sworn.)

10             THE COURT:  You may be seated.  Now that you have

11   taken an oath, when you answer my questions, you do so

12   subject to the penalties of perjury or making a false

13   statement.  That means that if you don't tell the truth in my

14   courtroom today, if you lie to me, new criminal charges could

15   be brought against you just for that.

16             THE DEFENDANT:  I understand.

17             THE COURT:  Are we clear?

18             THE DEFENDANT:  I understand.

19             THE COURT:  State your full name.

20             THE DEFENDANT:  Fausto Bonifaz.

21             THE COURT:  How old are you?

22             THE DEFENDANT:  Thirty-nine.

23             THE COURT:  How much schooling have you had?

24             THE DEFENDANT:  College.

25             THE COURT:  Did you graduate from college?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  In the United States?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Is English your native language?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Are you having any difficulty

7    understanding or hearing me today?

8          THE DEFENDANT:  No, I am not.

9          THE COURT:  Are you now, or have you in recent

10   months, been seeing a doctor, psychiatrist, or other

11   healthcare professional for any physical, mental, or

12   emotional problems?

13         THE DEFENDANT:  No, I have not.

14         THE COURT:  In the last 24 hours, have you taken

15   any narcotics, drugs, medicine, pills, or alcohol?

16         THE DEFENDANT:  No. I have not.

17         THE COURT:  Have you ever in your life been

18   hospitalized or treated for drug or alcohol abuse or mental

19   or psychiatric problems?

20         THE COURT:  No, I have not.

21         THE COURT:  Is your mind clear today?

22         THE DEFENDANT:  Yes, it is.

23         THE COURT:  Do you feel healthy, focused, and

24   alert?

25         THE DEFENDANT:  I do.  Nervous.

```
1                    THE COURT:  Sure.  But natural nervous or

2        nervous --

3                    THE DEFENDANT:  Yeah.

4                    THE COURT:  -- where you can't concentrate?

5                    THE DEFENDANT:  Natural, sir.

6                    THE COURT:  Are you understanding everything that's

7        going on?

8                    THE DEFENDANT:  Yes, I am.

9                    THE COURT:  Counsel, have you filed a notice that

10       you're retained in this matter?

11                   MR. GRECO:  Yes, Your Honor, I have.

12                   THE COURT:  You filed a notice of appearance?

13                   MR. GRECO:  I have, Your Honor.

14                   THE COURT:  And you're a member of our -- the bar

15       of our court?

16                   MR. GRECO:  I am, Judge.

17                   THE COURT:  Have you discussed the matter of

18       pleading guilty carefully with your client, Mr. Greco?

19                   MR. GRECO:  Numerous times, Your Honor.

20                   THE COURT:  Does he, in your judgment, understand

21       the rights he'll be waiving if he tenders a plea of guilty?

22                   MR. GRECO:  Yes, Your Honor.  He does.

23                   THE COURT:  Is he capable of understanding the

24       nature of this proceeding in your judgment?

25                   MR. GRECO:  Yes, Your Honor.
```

1    THE COURT:  Do you have any doubt about his

2    capacity to enter a plea of guilty at this time?

3        MR. GRECO:  No, I do not, Judge.

4    THE COURT:  Have you alerted your client to the

5    maximum and minimum sentence and fine that might be imposed,

6    the likely operation of the sentencing guidelines as best you

7    can anticipate it, the restitution that the government may be

8    seeking on behalf of victims in this case, and the collateral

9    consequences of his conviction as well?

10       MR. GRECO:  I have gone over all those things, Your

11   Honor.

12       THE COURT:  Thank you.  Mr. Bonifaz, have you had

13   enough time to go over your case very carefully with your

14   lawyers, and have you done that?

15       THE DEFENDANT:  Yes, I have, Your Honor.

16       THE COURT:  I want to make sure you understand that

17   if you could not afford your lawyers' fees anymore and you

18   demonstrated that to my satisfaction, I would appoint a

19   lawyer, an experienced criminal defense lawyer, to defend you

20   at no cost to you.

21       You should not plead guilty because you think it's

22   a way of avoiding legal fees that you might not be able to

23   afford.  Do you understand me?

24       THE DEFENDANT:  Yes.  Thank you, Your Honor.

25       THE COURT:  Are you satisfied to be represented by

1    the attorneys who have been defending you so far and who are

2    beside you in your -- in the courtroom today?

3              THE DEFENDANT:  Yes, I have.

4              THE COURT:  You have been satisfied?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  And you want to continue with them as

7    your lawyers?

8              THE DEFENDANT:  Correct.

9              THE COURT:  Have you received a copy of the

10   indictment?  That's the document where the various criminal

11   charges against you are set forth in writing?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Have you reviewed that indictment very

14   carefully with your attorneys?

15             THE DEFENDANT:  Yes, I have.

16             THE COURT:  Your plea agreement indicates -- are

17   you looking for a copy of it to go over with him?  I'll give

18   you a minute to find it.

19        (Pause.)

20             THE COURT:  Your plea agreement indicates that you

21   wish to plead guilt -- guilty to Count 1 of the indictment.

22   And that's what I'm going focus your attention on right now.

23             THE DEFENDANT:  That is correct, Your Honor.

24             THE COURT:  In that charge, you're accused of

25   committing a crime between September of 2009 and November of

1     2010.  Do you need a copy of the indictment, Counsel?  Ms.

2     Demas is offering to provide you with one.

3               MR. GRECO:  I've got one, Judge, but to save the

4     Court time.  Thank you.

5               THE COURT:  Thank you, Mr. Greco.  Thank you, Ms.

6     Demas.

7               In Count 1, you're charged with committing a crime

8     between September of 2009 and November of 2010.

9               The crime you're charged with committing in that

10    count is knowingly and intentionally persuading or inducing

11    or enticing or forcing someone under 18, someone whose

12    identity is known to the grand jury, knowingly and

13    intentionally persuading, enticing, or forcing that

14    individual to engage in sexual activity that is criminalized

15    under the United States Code in a section addressing sexual

16    abuse of a minor, and doing so at a location that is within

17    the territorial jurisdiction of the United States, or more

18    specifically, the Army base at Fort Hamilton in Brooklyn, New

19    York.

20              Do you understand what you're accused of in Count 1

21    of this indictment?

22              THE DEFENDANT:  Yes, I do, Your Honor.

23              THE COURT:  You have a right to plead not guilty or

24    stand on and persist in any not guilty plea you may have

25    previously entered to these and the other charges pending

13

1    against you.  That's your right, even if you committed this

2    crime.

3            Every defendant, whether he is guilty or not, has

4    the right to plead not guilty.  And pleading not guilty is

5    never lying or misleading the Court, even if you are, in

6    fact, guilty of the offenses.

7            Every defendant has the plea to right -- plead --

8    has the right to plead not guilty, because that is the way a

9    defendant in our system exercises his constitutional right to

10   a trial.  Do you understand that?

11           THE DEFENDANT:  Yes, I do, Your Honor.

12           THE COURT:  If you were to persist in your

13   previously entered not guilty pleas, or plead not guilty

14   today, then under the constitution and laws of the United

15   States you would be entitled to a speedy and public trial by

16   a jury with the assistance of your attorneys, not only at the

17   trial but at all stages of the tri -- of the case against

18   you, and not only on Count 1, but on all of the charges

19   pending against you.  Is this clear to you?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  At your trial, you would be presumed to

22   be innocent.  The prosecution would be required to overcome

23   this presumption of innocense and to prove that you were

24   guilty by competent evidence and beyond a reasonable doubt.

25           You would not have to prove that you were innocent

14

1     at the trial.  If the prosecution failed to prove that you

2     were guilty beyond a reasonable doubt, the members of the

3     jury would have the duty to return a verdict of not guilty,

4     and Judge Dearie would instruct them accordingly.  Did you

5     follow that?

6              THE DEFENDANT:  Yes, I do.

7              THE COURT:  That's why sometimes jurors find

8     defendants not guilty even though the members of the jury

9     think the defendant probably did commit the crimes of which

10    he stands accused.

11             When a jury returns a verdict of not guilty, it's

12    not necessarily because the jurors believe the defendant is

13    innocent.  Jurors are instructed that they must return a

14    verdict of not guilty unless they are convinced beyond a

15    reasonable doubt that the defendant is, in fact, guilty.  Do

16    you understand that?

17             THE DEFENDANT:  Yes, I do, Your Honor.

18             THE COURT:  If you decided to proceed to a trial,

19    the prosecutor's witnesses would be required to come into the

20    courtroom and to present their testimony against you right in

21    front of you and your attorneys.

22             Your attorneys would have the right to question the

23    prosecution witnesses on cross examination.  Your attorneys

24    would have the right to raise objections to evidence that the

25    prosecutor attempted to offer against you.

15

1          And you and your attorneys, working together, would

2     have the right to call witnesses, present evidence other than

3     testimony, and make arguments in your defense to the jury all

4     during the course of the trial.

5          In fact, you could even issue subpoenas requiring

6     people you wanted to testify to come to court and testify in

7     your defense.  Do you understand all of that?

8          THE DEFENDANT:  Yes, I do, Your Honor.

9          THE COURT:  At your trial, you yourself would have

10    the right to be a witness in your own defense and testify in

11    your case if that was the choice you made.

12          On the other hand, no one could require you to

13    testify at your trial.  That's because the Constitution of

14    the United States provides that no one may be required to say

15    anything that is self-incriminating.

16          If you decided that your choice was not to testify

17    at all at your trial, Judge Dearie would instruct the members

18    of the jury that they could not take your silence, your

19    decision not to testify, into account or hold it against you

20    in any way when they decided upon their verdict.  Is that

21    clear to you?

22          THE DEFENDANT:  Yes, Judge, it is.

23          THE COURT:  On the other hand, if you tender a

24    guilty plea in my courtroom this afternoon and Judge Dearie

25    accepts it, you will as a result be surrendering your

16

1    constitutional right to trial and all of the other rights

2    I've been describing to you today.

3            There will be no further trial of any kind in your

4    case after today.  You'll have no right to appeal from the

5    conviction that will follow from your guilty plea if you make

6    one today.  Judge Dearie will essentially convict you and

7    find you guilty based upon your admissions during the

8    proceeding that we are holding right now.  And that will free

9    the prosecution of its responsibility to prove what you did.

10   Do you understand that?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  If you decided that instead of pleading

13   guilty you wanted to go to trial and if at that trial you

14   were convicted by a jury's verdict, then you would have the

15   right to take an appeal to a higher court and ask that higher

16   court -- we call it the Court of Appeals -- to review the

17   legality of all of the proceedings that led up to your

18   conviction.

19           But when you enter a plea of guilty, you are in

20   essence substituting your own words for the jury's verdict.

21   Instead of asking the jury whether to find you guilty or not,

22   you're essentially admitting that you are guilty.

23           And when you do that, you give up your right to

24   bring an appeal, or legal challenge to the conviction or

25   guilty judgment that is entered against you as a result.  Do

1    you understand that?

2              THE DEFENDANT:  Yes, I do, Your Honor.

3              THE COURT:  If you plead guilty, I'm going to have

4    to ask you questions about what you did, so that Judge Dearie

5    and I can be satisfied that your guilty plea is based on

6    facts that really took place.

7              You do not have to answer those questions unless

8    you want to go forward with your guilty plea.  If you do

9    answer them and you admit your involvement in criminal

10   activity, you will as a result be surrendering your

11   constitutional right not to say anything that is self-

12   incriminating.  Do you understand me?

13             THE DEFENDANT:  Yes, I do, Your Honor.

14             THE COURT:  Do you still want to give up your right

15   to trial and all the other rights I've been describing to you

16   today?

17             THE DEFENDANT:  I want to ask two questions,

18   actually, now that I'm actually looking at the count itself.

19             THE COURT:  Do you want to ask them of me or of

20   your lawyer privately?

21             THE DEFENDANT:  I'd rather ask you --

22             THE COURT:  Okay.

23             THE DEFENDANT:  -- if you don't mind.  The first

24   one was regarding the first opening comment about the

25   victims.  I'm stating from the beginning that there is only

18

1      one.

2                  THE COURT:  In Count 1.

3                  THE DEFENDANT:  Correct.  And the second one, I'm

4      reading in between the language they're saying of persuading,

5      inducing, enticing, coerce.

6                  From my understanding -- unless I'm incorrect and

7      please clarify if I need it -- my understanding is that it's

8      because of the age that it's understood that it -- it was

9      done that way.

10                 But I am sticking firmly there was a mutually

11     consenting situation.

12                 THE COURT:  Ms. Demas, do you care to address the

13     Court with respect to the legal issues raised by the

14     defendant's questions?

15                 MS. DEMAS:  Your Honor, I think with respect to

16     question number one, that was in response to my comment about

17     victim notification.  This office is obligated to notify

18     victims.  I understand and -- that the defendant contends

19     that there was only one victim.  The indictment contains

20     three.

21                 For purposes of the plea, it's immaterial because

22     he's only pleading to one charge.  The only place where it

23     comes into play is in the guidelines calculation and the

24     defendant has not stipulated to the guidelines calculation.

25     He's, therefore, preserving the right at sentencing to

19

1   challenge that guidelines calculation and, specifically, the

2   presence of multiple victims really only adds anything in the

3   grouping analysis, and that is in the plea agreement at page

4   four.

5           I have discussed this at length with the

6   defendant's attorney.  My understanding is that the

7   defendant's attorney has discussed this at length with the

8   defendant, and there is nothing in the plea agreement wherein

9   the defendant is stipulating or pleading to three victims.

10  So I think that satisfies that issue.

11          With respect to the allocution or the language of

12  the indictment, I mean, the language is what it is.  A person

13  between the age of 12 years and 16 years is not capable of

14  legally consenting.  So, but the language of the statute is

15  what it is.  It says --

16          THE COURT:  Well, but is it the government's

17  position that the legal requirement of persuasion,

18  inducement, enticement, or coercion is satisfied when someone

19  who is over 20 years old has a consensual sexual relationship

20  with someone who is 12 to 16 years old?  I say over 20,

21  because the statute requires --

22          MS. DEMAS:  Right.

23          THE COURT:  -- that the accused partner be at least

24  four years older than the alleged victim.

25          MS. DEMAS:  That's correct, Your Honor.

1          THE COURT:  So you are in essence agreeing with the

2     legal proposition that the age difference is sufficient to

3     satisfy the elements of the offense?

4          MS. DEMAS:  Yes.  And I would note that one of the

5     words, persuade -- I don't know that the defendant has an

6     issue with that word.

7          It's the -- the indictments, our indictments, as

8     the Court knows but the defendant may not, are always phrased

9     with an "and," whereas the statute itself is in the

10    disjunctive.  So as long as the defendant can say that he

11    persuaded, I think that solves the issue in a very clean way.

12         THE COURT:  All right.  Well, let me try to

13    summarize what I -- unless -- unless, Mr. Greco, you wish to

14    be heard further on any of --

15         MR. GREGO:  Judge, the --

16         THE COURT:  -- these points?

17         MR. GRECO:  I'm sorry, Judge.

18         The only thing I would add is that pursuant to what

19    Ms. Demas was saying, I have gone over this with my client.

20    He understands that he may not necessarily be in agreement to

21    some of the issues that he's raised, but I have gone over it

22    --

23         THE COURT:  Okay.

24         MR. GRECO:  -- at length as to why there is a

25    rebuttal presumption that if a victim is under a certain age

1    and he's older than four years, as Your Honor has pointed

2    out, then there is a presumption that it was induced,

3    persuaded, and so forth, as the indictment alleges.

4              THE COURT:  Okay.  So what the -- let me make sure

5    that Mr. Bonifaz understands everything that was just said --

6              THE DEFENDANT:  Thank you.

7              THE COURT:  -- and agrees with it.

8              First of all, the government is going to argue to

9    the Court, or at least reserves the right to argue to the

10   Court, that there were more than one victim -- there was more

11   than one victim.  There were multiple victims of what you

12   did, and that your sentence should be longer because of it.

13             You have the right at your sentencing to argue that

14   there was only one victim and that the government's proof

15   about the other victims is in an insufficient basis and wrong

16   as a matter of fact, and that you shouldn't receive a longer

17   sentence because of it.

18             And that's the current state of affairs under which

19   you're being asked to decide whether to plead guilty or not.

20             THE DEFENDANT:  Thank you.

21             THE COURT:  Are we clear on that?

22             THE DEFENDANT:  Yes.  Thank you, Your Honor.

23             THE COURT:  Second, what your lawyer has described

24   -- and I don't know the legal answer to this question, but it

25   sounds correct to me -- that there is a presumption.

22

1          A presumption that because of the age difference

2     you are liable or legally responsible under our criminal law

3     for persuading or inducing or enticing someone at least four

4     years younger than you, who is also under 18, of having the -

5     - of engaging in the sexual activity that I imagine I'm going

6     to hear more about later.

7          When your lawyer describes it as a rebuttable

8     presumption, I think what he is suggesting is that the

9     government need not do any more than prove the fact of the

10    age difference and the fact that the sexual contact took

11    place to establish its case, but that you would have the

12    right at the trial to try to prove that everything was

13    consensual.  But I presume your lawyer would advise you that

14    that would require the victim's cooperation.  I use the term

15    victim, meaning the person with whom the sexual contact was

16    had.

17          Mr. Grego, have I done justice to your concept?

18          MR. GRECO:  Yes, Your Honor, you have.

19          THE COURT:  Mr. Bonifaz, do you understand what

20    I've said?

21          THE DEFENDANT:  Yes.  Thank you, Your Honor.

22          THE COURT:  Do you want to go forward?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Do you have any other questions at this

25    time?

23

1          THE DEFENDANT:  No.  I just wanted to clarify that.

2     Thank you.

3          THE COURT:  You're welcome.  I think I'm not

4     exactly sure where I stopped, so I am going to go back a

5     little bit over some ground I already covered to make sure I

6     don't skip anything.

7          What I was saying to you when you asked your

8     question was that if you do plead guilty, I'm going to have

9     to ask you questions about what happened.  I told you you

10    don't have to answer those questions unless you want to go

11    forward with your guilty plea, but that if you do, you'll be

12    surrendering your constitutional right to remain silent and

13    not incriminate yourself.

14          And I wanted to make sure that you understood that

15    by explaining to me what happened, which is part of pleading

16    guilty, you are surrendering that constitutional right not to

17    be self-incriminating.  Do you understand that?

18          THE DEFENDANT:  Yes.  I do understand.

19          THE COURT:  Do you still want to give up your right

20    to trial and all the other rights I've been describing to you

21    today?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  I understand that you're making the

24    decision pursuant to the terms of a written plea agreement.

25    The original copy of that agreement has been marked as

24

1    Court's Exhibit 1 and I'm going to ask my clerk to give it to

2    your lawyer so you can look at the original with me.

3         (Pause.)

4              THE COURT:  Do you have Court Exhibit 1 before you

5    now?

6              THE DEFENDANT:  Yes, I do, Your Honor.

7              THE COURT:  Does your signature appear upon the

8    last page?

9              THE DEFENDANT:  Yes, it does.

10             THE COURT:  Before you signed it, did you read it?

11             THE DEFENDANT:  Yes, I did.

12             THE COURT:  Did you go over it very carefully with

13   your attorney?

14             THE DEFENDANT:  Yes, I did.

15             THE COURT:  Did you understand what you signed?

16             THE DEFENDANT:  Yes, I do.

17             THE COURT:  Do you have any questions about

18   anything the agreement says that you want to ask me or review

19   with your attorneys before you go forward?

20        (Pause.)

21             THE DEFENDANT:  If it was possible, I wanted just a

22   bit of a clarification on one of the add-ons to the initial

23   count.

24             THE COURT:  I'm -- can you point me to a page --

25             THE DEFENDANT:  Sure.

1          THE COURT:  -- that you're looking at?

2          THE DEFENDANT:  It would be page three.

3          THE COURT:  Mm-hmm.

4          THE DEFENDANT:  And it's referring to 2G1.3(b)(4).

5          THE COURT:  Mm-hmm.

6          THE DEFENDANT:  I just want to know from your

7    perspective what does that refer to?

8          THE COURT:  I honestly don't have a perspective on

9    that, but we can get out the Guidelines Manual and read you

10   the provision.  Or I say we, but what I'm really counting on

11   is Ms. Demas.

12         THE DEFENDANT:  The reason that I ask this question

13   is because it seems to me that if I'm accepting this count,

14   that particular line seems almost redundant.  It's kind of

15   like saying if I'm doing this, this is what I'm doing.  And

16   it doesn't seem correct to me.

17         THE COURT:  I understand what you're saying.  Could

18   you start by reading us the text?

19         MS. DEMAS:  Sure, Your Honor.  2G1.3 of the

20   guidelines, subsection (b)(4) provides that, "If the offense

21   involved the commission of a sex act or sexual contact, or

22   subsect -- or (B) subsection (a)(3) or (a)(4) applies and the

23   offense involved a commercial sex act, increase by 2 levels."

24         I think perhaps it would be helpful for the

25   defendant to understand that this is the guidelines

26

1    calculation.  The guidelines -- the way that the guidelines

2    are written is that, you know, for 2G1.3 it covers a number

3    of offenses.  So while from the defendant's perspective it

4    may seem that by pleading guilty to an offense that involves

5    sexual contact, he is already admitting to that.

6           For guidelines purposes, it is relevant and that's

7    why it's in here.

8           THE COURT:  Well, let me ask -- I -- I have a

9    question that's --

10          MS. DEMAS:  Yes.

11          THE COURT:  -- triggered by the defendant's that

12   may -- may more accurately reflect what's concerning him.

13          I think the question that he is asking may also be

14   understood as whether it's the government's position that

15   (b)(4) and (b)(2) involves separate enhancements from the

16   level 28 offense level and what those -- what each

17   enhancement is for that isn't captured by the (c)(3) offense

18   and why they're different from each other.

19          MS. DEMAS:  Okay.  Let me just make sure -- let me

20   make sure I understand the --

21          THE COURT:  Okay.

22          MS. DEMAS:  -- the question.  Okay.

23          THE COURT:  Do you want me to rephrase it?

24          MS. DEMAS:  I -- no.  I think I understand.  Okay.

25   So starting with the offense level, that covers the statute

1    that he is convicted under.

2              THE COURT:  Right.

3              MS. DEMAS:  And that statute has a -- a number of

4    different things that one may do to satisfy it.  So --

5              THE COURT:  To violate it.

6              MS. DEMAS:  To violate it.

7              THE COURT:  Yes.

8              MS. DEMAS:  Right.  Excuse me.  Sorry.  And I'm

9    sorry, Your Honor, I did not bring my statute book, but had

10   it -- if I had it in front of me, the Court would note that

11   there are a number of different sections.

12             THE COURT:  Yes.

13             MS. DEMAS:  It's the coercion and entitement [sic]

14   -- enticement statute, and one of them is using a telephone

15   line or a computer.

16             What the defendant is specifically charged with is

17   committing a violation of engaging in sexual activity for

18   which a person can be charged with a criminal offense, which

19   is sexual abuse of a minor.  And that appears in Section

20   2243(a).  And the jurisdictional hook is that it occurred at

21   the Fort Hamilton Army Base.  So that's what leads us to 28.

22             Now, the question is:  What is the basis for the

23   enhancement two -- I'm sorry -- for the enhancement under

24   (b)(2)?

25             THE COURT:  Mm-hmm.

1          MS. DEMAS:  And that is that if one looks at the

2     advisory notes to Section (b)(2), that explains my thinking

3     at the time that I wrote this and it is -- excuse me.  So in

4     determining whether this applies -- and again, this is a

5     guidelines calculation.  It's not binding.  "The court should

6     closely consider the facts of the case to determine whether a

7     participant's influence over the minor compromised the

8     voluntariness of the minor's behavior.  The voluntariness of

9     the minor's behavior may be compromised without prohibited

10    sexual act occurring."

11         So in my mind, that enhancement applies whether or

12    not sexual contact occurs and it's a function of the

13    defendant's relationship with the minor.

14         I can go into details as to the reasoning here that

15    I think it applies, but --

16         THE COURT:  I think that will distract us --

17         MS. DEMAS:  Okay.

18         THE COURT:  -- from the more abstract question --

19         MS. DEMAS:  Sure.

20         THE COURT:  -- that was asked.  And -- and -- so,

21    in other words, the (b)(2) I think may be fairly said to

22    reflect the level of influence attributed to the defendant --

23         MS. DEMAS:  Exactly.

24         THE DEFENDANT:  -- over the minor.

25         MS. DEMAS:  Yes.

1          THE COURT:  And the (b)(4) enhancement may be

2     attributed to the fact that sexual contact --

3          MS. DEMAS:  That a sex act --

4          THE COURT:  -- occur -- a sex act occurred.

5          MS. DEMAS:  Yes, Your Honor.

6          THE COURT:  Right.  And sexual --

7          MS. DEMAS:  Or sexual contact.  Sorry.

8          THE COURT:  Yes.  Do you understand the difference

9     now?

10         THE DEFENDANT:  Yes, I do, Your Honor.

11         THE COURT:  I also want to point out to you, even

12    more clearly than Ms. Demas has -- and I will say that was a

13    very clear explanation of a complicated set of interlocking

14    concepts -- that the underlying statute that gets you to the

15    28 levels -- now we have to see if I'm remembering it

16    correctly -- covers a variety of things that an adult --

17    excuse me -- that anyone might be coerced or persuaded to do.

18    Not all of which involve a minor.  Not all of which involve

19    sexual contact.

20         And that's why the level 28 does not fully, in the

21    view of the drafters of the guidelines as best we can discern

22    it, does not fully encompass the scope of the criminal

23    conduct that the prosecution attributes to you.  Did -- did

24    you follow that?

25         THE DEFENDANT:  Yes, I do.

30

1          THE COURT:  Okay.  Do you have any more questions

2     about it?

3          THE DEFENDANT:  No.  And I really appreciate it.

4     Thank you very much, sir.

5          THE COURT:  Well, it's a fair --  it's a very fair

6     question and it's not an easy thing even for people who work

7     with these guidelines every day to grab and explain.  So I'm

8     glad you felt comfortable to ask it.

9          Once again, I've sort of lost my thread, so I'm

10    going to go back a few steps.

11         I think I showed you your plea agreement and I

12    asked you if you had any questions about it that you wanted

13    to ask me or discuss privately with your attorney.

14    Obviously, you've asked one.

15         Do you -- or a group of questions.  Do you have any

16    others you want to raise?

17         THE DEFENDANT:  No, I don't, Your Honor.

18         THE COURT:  Is everything in the agreement clear to

19    you now?

20       (Pause.)

21         THE DEFENDANT:  I was made aware that in page four

22    -- sorry, give a reference on this.  In the imposition of the

23    sentence --

24         THE COURT:  Yes.

25         THE DEFENDANT:  -- the range is from 151 to 188.

1          THE COURT:  Yes.

2          THE DEFENDANT:  But still it's stating that it is

3    210.  Right above from the 168 to the 210 --

4          THE COURT:  Mm-hmm.

5          THE DEFENDANT:  -- and from my understanding it

6    basically means that if there was any kind of imposition of a

7    sentence that goes beyond or to the 210 itself, I have no

8    right to make a plea against that.

9          THE COURT:  That's correct.  I see -- go ahead, Ms.

10   Demas.

11         MS. DEMAS:  Your Honor, I just -- I have a

12   different version of the plea agreement, but I do want to

13   make sure that the guilty plea date is today, or at least a

14   date after today, so --

15         THE COURT:  Mr. Greco, do you have the -- you have

16   the original out and Ms. Demas and I are looking at drafts.

17         THE DEFENDANT:  Yes.  It says March 6.

18         THE COURT:  It says --

19         MS. DEMAS:  Okay.

20         THE COURT:  -- March 6?

21         MS. DEMAS:  So -- so we should change it to March

22   17th.

23         THE COURT:  Yes.  So that has to be -- if you could

24   just pen in March 17th and you and the defendant initial it,

25   we'll cover up that little technical glitch.

32

1          Here is the best way I can explain or the best way

2     I can answer your question.  And I'm going to talk to you

3     about the guidelines in greater detail a little bit later.

4     But here is the way I understand it and I'm going to ask Ms.

5     Demas to correct me if I'm wrong.

6          The government will give you an estimate of the

7     guideline range that they've calculated, but they're asking

8     you, as part of the plea agreement, to waive your right to

9     challenge the sentence even if it's one notch up from the

10    guideline range they've estimated.

11         So they've calculated a guideline range of 151 to

12    188 assuming your plea goes through.

13         THE DEFENDANT:  Correct.

14         THE COURT:  But as part of the deal, if you will,

15    the negotiation that went on between you and the prosecution,

16    they're asking you to waive your right to appeal if you

17    receive a sentence of 210 months or less.  And that's the

18    proposition that's being offered to you.

19         Is that fair, Ms. Demas?

20         MS. DEMAS:  That's correct, Your Honor.  And as I

21    explained to Mr. Bonifaz's counsel, that's our office's

22    policy.  We always tie the appellate waiver to the top of the

23    guidelines level minus that last acceptance point.  And the

24    reason for that is oftentimes Probation or the Court may end

25    up estimating the guidelines level higher.  So --

33

1          THE COURT:  Or deciding that the guilty plea

2     doesn't satisfy the acceptance of responsibility point.

3          MS. DEMAS:  True.  Both of those things.  So that's

4     the reasoning.

5          I'm sure Mr. Bonifaz's attorney can explain that in

6     -- for practical purposes, it probably won't make a

7     difference.  But that's not my role --

8          THE COURT:  No.

9          MS. DEMAS:  -- here.

10          THE COURT:  Nor the Court's.  Did you understand?

11          THE DEFENDANT:  I do understand that.  But if I'm

12     pleading and everything goes according to the point system

13     that works it out down to the actual 188, I should still have

14     the opportunity to have some sort of a -- to make any -- a

15     comment regarding the fact why we go beyond that.

16          THE COURT:  Well, I'm going to go into this in more

17     detail in a minute --

18          THE DEFENDANT:  I'm sorry if I'm jumping the gun --

19          THE COURT:  No.

20          THE DEFENDANT:  -- on that.

21          THE COURT:  That's -- that's fine.  I want --

22          THE DEFENDANT:  It's just today is about --

23          THE COURT:  -- I want you to -- this is the prob --

24     one of the most significant days of your life and I want you

25     to understand everything.

1          THE DEFENDANT:  Thank you, Your Honor.

2          THE COURT:  But here is the way I would put it to

3     you.  At your sentence, you'll have the right to tell Judge

4     Dearie whatever is on your mind.  And you and your lawyer can

5     argue that even the 188 is too high.  And they can say, if

6     there is a good faith basis for saying it, that the

7     government's guidelines calculation is too great.

8          Judge Dearie will then make a decision after

9     listening to you patiently and carefully, I have no doubt.

10    But if the decision is 210 months or less, you can't appeal

11    from it and raise a legal challenge in another court.

12         And that's just one of the prices you have to pay

13    to get the benefit of pleading guilty to one count instead of

14    additional counts in the indictment or going to trial.

15    Because that's the best offer the government is making you.

16         THE DEFENDANT:  Understood.

17         THE COURT:  Okay.

18         THE DEFENDANT:  Yes.

19         THE COURT:  Do you still want to go forward?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Okay.  Is everything else in the plea

22    agreement clear to you?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Did anyone pressure you or threaten you

25    or force you to sign it?

35

1          THE DEFENDANT:  Nobody did.

2          THE COURT:  Did anybody promise you anything that's

3   not written down in the agreement and not stated here in open

4   court today in return for your guilty plea?

5          THE DEFENDANT:  No.  They have not.

6          THE COURT:  We've already been over -- I'd like the

7   original back at this point, please.  Do you have another

8   copy to look at?

9          MR. GRECO:  I do have --

10          THE DEFENDANT:  We have, Your Honor.

11          MR. GRECO:  -- I do have copies of the plea

12   agreement --

13          THE COURT:  Great.

14          MR. GRECO:  -- Judge.

15          THE COURT:  All right.  So let the record reflect

16   that Court Exhibit 1 has been handed back to me, and that

17   indeed as I requested, counsel and the defendant have changed

18   the March 6th date in paragraph two on page four to March

19   17th, put their initials by that change, and I'm adding my

20   own.  Thank you.

21          Mr. Bonifaz, we've been over the charge in the

22   indictment in Count 1.  Do you have it clearly in mind?

23          THE DEFENDANT:  Yes, I do, Your Honor.

24          THE COURT:  I want to review with you then the

25   penalties you'll be facing if your guilty plea goes forward.

36

1    Are you ready for that?

2              THE DEFENDANT:  Yes, I am, Your Honor.

3              THE COURT:  The crime you are accused of committing

4    requires Judge Dearie to sentence you to prison for at least

5    ten years and authorizes a prison term as long as the rest of

6    your life.  Do you understand me?

7              THE DEFENDANT:  I do understand, Your Honor.

8              THE COURT:  The statute also requires Judge Dearie

9    to sentence you to supervised release for at least five years

10   and authorizes the supervised release term as long as the

11   rest of your life.  Do you understand that?

12             THE DEFENDANT:  I do understand, Your Honor.

13             THE COURT:  Supervised release is a period of time

14   that doesn't even start until you finish serving your prison

15   sentence.

16             THE DEFENDANT:  I realize that.

17             THE COURT:  Once you've finished serving your

18   prison term, you'll be released from prison but you won't

19   really be completely at liberty, because although you won't

20   be in a cell anymore, you'll be subject to what we call

21   supervised release rules.  So many I can't list them all for

22   you today.

23             The rules will include, but not be limited to,

24   restrictions on your right to travel freely and requirements

25   that you regularly report to a probation officer, follow that

1    officer's instructions carefully, answer that officer's

2    questions honestly, and commit no new crimes whatsoever while

3    on supervised release.  Is that clear?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  If you break any supervised release

6    rule, whether in doing so you've committed a new crime or

7    not, you could be arrested, brought back to this court, and

8    sent back to prison for up to five more years.  You'd get no

9    credit against that five year sentence for the time you spent

10   serving your original sentence.  You'd get no credit for the

11   time you spent at liberty with your freedom restricted by

12   supervised release.  It would be a new five year term, but on

13   this old criminal act.  Is that clear to you?

14             THE DEFENDANT:  Yes, it is, Your Honor.

15             THE COURT:  If you commit certain offenses

16   specified in the plea agreement, then that violation of

17   supervised release term sentence would have to be at least

18   five years and could be as long as the rest of your life.

19   And they're mostly sex crimes.  Do you understand that?

20             THE DEFENDANT:  Yes, I do understand, Your Honor.

21             THE COURT:  A fine of up to $250,000 may be

22   imposed.  Is that clear?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  You will be required to make

25   restitution to the victims of your crimes.  That restitution

38

1    hasn't been measured yet.  And the government will argue that

2    there are multiple victims entitled to restitution.  Is that

3    right?

4              MS. DEMAS:  That's correct, Your Honor, to the

5    extent that the victims seek restitution.

6              THE COURT:  Do you understand that, Mr. Bonifaz?

7              THE DEFENDANT:  Yes, I do, Your Honor.

8              THE COURT:  And that's separate and apart from any

9    fine that might be imposed.  Do you understand that?

10             THE DEFENDANT:  I do, Your Honor.

11             THE COURT:  A $100 special assessment will be

12   imposed upon you at or about the time you are sentenced as it

13   is on every defendant's sentence to a felony.  Do you

14   understand that?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Then there are a series of other

17   penalties that flow from the nature of the offense.  They're

18   loosely called sex offender registration requirements.  They

19   may change over time.  They may change between today and the

20   time you're released from prison, but basically, you're going

21   to have to tell the authorities where you live and what

22   you've been convicted of, and you may have restrictions on

23   the places you can go, like schoolyards and parks where

24   children congregate.  Do you understand that?

25             THE DEFENDANT:  I do, Your Honor.  I have a

1    question.  My -- my wife, she is currently pregnant and we're

2    expecting a child.  And I want to know what kind of

3    limitations will that have as an impact to me as a father for

4    my son.

5              THE COURT:  I don't know the answer to that.  Does

6    the government?

7              MS. DEMAS:  I don't, Your Honor.  But -- it -- and

8    I'm hesitant to say anything, although it is not my

9    understanding that the defendant would be prevented from

10   having contact with his own child, if that's the question.

11             THE COURT:  Mr. Greco, have you given your client

12   any advice on that subject?  And I don't want to know what it

13   is necessarily.  You can remind him of it privately if -- if

14   you have.

15             MR. GRECO:  Judge, I have gone over this with Mr.

16   Bonifaz.  He did ask that question and I did give him an

17   explanation as to the best of my understanding with

18   explaining to him that things could change at the time, like

19   Your Honor mentioned --

20             THE COURT:  Yes.

21             MR. GRECO:  -- when they actually became applicable

22   when he was released.

23             THE COURT:  Yes.  So -- I just don't know the

24   answer to the question.  If you want to adjourn today's

25   proceeding and ask your lawyer to investigate it further, and

1      he is agreeable to that, I don't object to it.  But I can't

2      answer the question.

3                  THE DEFENDANT:  Would that impact this hearing and

4      the point system or any of that at this particular moment?

5                  THE COURT:  I don't think the government would

6      object to a brief adjournment if you wanted to have that

7      question explored further before you decided whether to go

8      forward or not.  Is there a trial date?

9                  MS. DEMAS:  No, Your Honor.  There's not a trial

10     date.

11                 THE COURT:  No, it wouldn't.

12                 THE DEFENDANT:  The reason I'm -- was bringing that

13     up is because obviously my family is very important to me and

14     I want to make sure.  I mean, I'm seeing like different

15     sections in terms of what things could limit, but I don't

16     have clarification each individual as far as how it would

17     affect --

18                 THE COURT:  I don't know --

19                 THE DEFENDANT:  -- you know, my -- my parenthood.

20                 THE COURT:  -- if you're ever going to get that.

21     It may even depend -- I don't know the answer to this -- but

22     it could well depend on what state you end up living in.

23     Because different states have different regulations.

24                 And it may well be that although, you know, there -

25     - there are a lot of possibilities.  One is that there could

1    be a bar.  The other is that there could be a bar in your

2    being alone with the child, so that there would always have

3    to be someone else present, another adult present.

4             Another possibility is that if it is your own

5    biological child that there wouldn't be any restriction.  I

6    don't know the answer.

7             THE DEFENDANT:  Thank you.  For now, I'll continue.

8             THE COURT:  Are you sure?

9             THE DEFENDANT:  Yes.  I just felt the need I had to

10   ask that, because it's important to me.  Thank you.

11            THE COURT:  I just want to make it clear that if

12   you want to adjourn, and the adjournment is short, and your

13   lawyer agrees that he can be even more complete in his

14   response to you, you would not suffer any prejudice from

15   that.

16            THE DEFENDANT:  Thank you, Your Honor.  But at this

17   point, I'll -- I'll continue.

18            THE COURT:  Okay.

19            THE DEFENDANT:  Thank you, Your Honor.

20            THE COURT:  Counsel, do you see any reason why your

21   client shouldn't continue?

22            MR. GRECO:  Nothing out of personal decision,

23   Judge.  I am happy for the record to explore that issue in

24   more detail to provide as accurate an answer as I can provide

25   if it differs from what I've already told him.  I'm happy to

42

1    do so at his request, but I really would have to put that

2    ball in his court, Your Honor.

3            THE COURT:  All right.  Well, I think we've heard

4    from him, so we'll go forward.  And, of course, that doesn't

5    preclude you learning more about what your rights and

6    responsibilities will be in that regard, but you could lose

7    the right to change your mind about pleading guilty if we

8    complete this and -- and you learn something new that you

9    don't like.  Understood?

10           THE DEFENDANT:  Thank you, Your Honor.  Yes.

11           THE COURT:  Okay.  So I told you that there will be

12   certain kinds of notifications and registrations you're going

13   to be required to make because of the nature of the offense,

14   and I think you told me you understood that.  Correct?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  Okay.  Then let's talk about what we do

17   call the sentencing guidelines, which we've already begun a

18   discussion of.  Now, these guideline -- yes, Ms. Demas.

19           MS. DEMAS:  Sorry, Your Honor.  I -- I do this in

20   an abundance of caution.  There is no indication that the

21   defendant would be subject to removal or deportation.

22   However, I've had it happen where people who I believe to be

23   born in the United States turned out not to be.  So I would

24   just ask that the Court --

25           THE COURT:  Yes.  Yes.

1            MS. DEMAS:  -- inform --

2            THE COURT:  Yes.

3            MS. DEMAS:  -- the defendant of that risk.

4            THE COURT:  If you are not a United States citizen,

5    born or naturalized, then you could be deported simply based

6    upon your plea of guilty to this offense.  Do you understand?

7            THE DEFENDANT:  I understand, Your Honor.

8            THE COURT:  Thank you, Ms. Demas.  That's an

9    appropriate reminder and I appreciate receiving it.

10           Now I'm going to talk to you about what we call the

11   sentencing guidelines.  You already know a lot about them.

12           The sentencing guidelines are going to be

13   calculated by Judge Dearie.  They're going to provide him

14   with a range of months, which -- within which the law will

15   suggest, but not require, that your sentence be set.

16           Have you talked to your lawyer about these

17   guidelines and gotten his advice about how he expects they're

18   likely to affect your sentence?

19           THE DEFENDANT:  Yes, I have.

20           THE COURT:  Now, the prosecutor estimates that

21   Judge Dearie will calculate your guideline range to be 151 to

22   188 months long.  I'm sure that estimate was made carefully

23   and indeed we've seen a reflection of the care with which Ms.

24   Demas has examined the sentencing guidelines in her

25   explanations to you today.

1          But however carefully made it was, it's not binding

2     on Judge Dearie.  Judge Dearie is going to calculate the

3     guidelines for himself.  He's not going to do that until he

4     receives a document that's labeled pre-sentence report.  The

5     report hasn't been written yet.

6          When it's ready, you and your lawyers and the

7     prosecutor are all going to have a chance to read it.  There

8     will be a proceeding before Judge Dearie at you -- at which

9     you and your lawyers will have the right to address the Court

10    on a number of matters, including, but not limited to,

11    anything in that report that you disagree with, think is

12    wrong, inaccurate, or unfair.  And only after hearing from

13    everybody will Judge Dearie decide what your guideline range

14    should be.

15          And it might be that he'll decide that an even

16    longer guideline range than the one Ms. Demas predicts will

17    be the one that the Judge decides applies.  It's possible it

18    could be shorter.  It's possible it could be longer.  Do you

19    understand?

20          THE DEFENDANT:  I do, Your Honor.

21          THE COURT:  Even after Judge Dearie calculates the

22    guidelines, he will look to additional factors.  He must by

23    law look to additional factors and surrounding circumstances

24    about you, your background, and your offense conduct before

25    he decides upon the final sentence.

1          The guidelines are, as we call them, advisory.

2     They provide the Judge with advice, but they are not binding.

3     So even after Judge Dearie decides what your guideline range

4     should be, he might decide that a sentence even longer than

5     the guideline range he's calculated is the most appropriate

6     one in your case.  Do you understand me?

7          THE DEFENDANT:  I do, Your Honor.

8          THE COURT:  If you receive a prison term of 210

9     months or less, you will have no right to take any appeal

10    from any aspect of this case.  Do you understand that?

11         THE DEFENDANT:  I do, Your Honor.

12         THE COURT:  Even if you're sentenced to prison for

13    longer than that period of time, you will have no right to

14    challenge your conviction or withdraw your guilty plea.  The

15    only right you would have in that event would be to challenge

16    the length of the sentence you've received.  Is that clear?

17         THE DEFENDANT:  I do, Your Honor.

18         THE COURT:  "I do" means it is clear?

19         THE DEFENDANT:  I do.  It is clear.

20         THE COURT:  Okay.  You may have heard of parole,

21    which is a program of early release from a prison sentence.

22    But it's a state court program.  You're in federal court

23    being sentenced by a federal judge to federal prison.

24    There's no parole in the federal system.  You won't be

25    released early from your sentence on parole.  Is that clear

1      to you?

2                  THE DEFENDANT:  Yes, it is, Your Honor.

3                  THE COURT:  Do you have any questions you want to

4      ask me or discuss privately with your lawyer that you haven't

5      asked already about your rights, the charges, the penalties

6      you face, your plea agreement, or anything else?

7                  THE DEFENDANT:  No, Your Honor.

8                  THE COURT:  Is everything I've told you today

9      clear?

10                 THE DEFENDANT:  Yes, it is, Your Honor.

11                 THE COURT:  Are you ready to enter your plea?

12                 THE DEFENDANT:  Yes, I am, Your Honor.

13                 THE COURT:  Mr. Greco, do you know of any reason

14     why your client should not tender the plea of guilty

15     contemplated by his agreement?

16                 MR. GRECO:  I don't know of any reason, Judge.

17                 THE COURT:  Mr. Bonifaz, with respect to the charge

18     against you in Count 1, in which you are accused of knowingly

19     and intentionally persuading, enticing, inducing, or coercing

20     a minor to engage in sexual activity at the Fort Hamilton

21     Army Base, how do you plead?  Guilty or not guilty.

22                 THE DEFENDANT:  Plead guilty, Your Honor.

23                 THE COURT:  Are you making this plea of guilty

24     voluntarily and of your own free will?

25                 THE DEFENDANT:  Yes, I am, Your Honor.

47

1          THE COURT:  Have you been threatened or forced or

2     pressured into offering this guilty plea?

3          THE DEFENDANT:  No, I have not, Your Honor.

4          THE COURT:  Has anyone promised you anything that

5     isn't written down in your plea agreement in return for your

6     guilty plea?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  Has anyone promised you anything about

9     the sentence you will receive from Judge Dearie in return for

10    your plea of guilty?

11         THE DEFENDANT:  No, Your Honor.

12         THE COURT:  Ms. Demas, maybe in this case I'm going

13    to ask what the government's proof would be if the case

14    proceeded to trial.

15         MS. DEMAS:  Sure, Your Honor.  First, I'm just

16    going to incorporate by reference the letter that was filed

17    on October 30th, 2014, which sets forth the -- the basis.

18         But for the Court's purposes, the government's

19    proof would be -- it would come in the form of the victim's

20    testimony.  There is also some corroborating evidence in the

21    form of phone records and other things.  But the evidence

22    would be that the defendant, who knew Jane Doe 1 and Jane Doe

23    1, as well as Jane Doe 2 and Jane Doe 3 -- sorry.

24         Let me back up for a second.  Jane Doe 1 lived at

25    the Fort Hamilton Army Base.  Jane Doe 2 lived at the Fort

48

1    Hamilton Army Base.  Jane Doe 3 did not.  She lived nearby.

2    However, the abuse took place at the Fort Hamilton Army Base

3    at Jane Doe 1's house.

4            The government would prove, through testimony and

5    evidence, that over a period of time, beginning in or around

6    December of 2009, the defendant began to have a sexual

7    relationship with Jane Doe 1.  At that time Jane Doe 1 was 12

8    years old.  The defendant knew her because he worked with

9    Jane Doe 1's mother.  He had a trusting relationship with

10   Jane Doe's mother.  And he, therefore, had access to their

11   house.  He would frequently be over as a guest.  Sometimes he

12   would spend the night.  Sometimes he would babysit for Jane

13   Doe 1.

14           It was during these times, sometimes when the

15   mother was home, but not aware of what was going on, or when

16   the mother had left Jane Doe 1 to be watched by the defendant

17   along with Jane Doe 1's younger siblings, that sexual

18   activity took place.

19           And the government's proof would be that this

20   sexual activity involved oral sex both of the defendant to

21   Jane Doe 1, of Jane Doe 1 to the defendant, and sexual

22   intercourse, which took place in 2010.

23           Now, my understanding is there are certain things

24   that the defendant contends did not happen.  For example,

25   sexual intercourse or any contact with Jane Doe 2 and Jane

1    Doe 3.

2            For purposes of this plea, it doesn't matter.  But

3    the government's proof at trial would be testimony from Jane

4    Doe 2 and Jane Doe 3 that the defendant did have sexual

5    contact with them, that it happened at Jane Doe 1's house,

6    and that it happened during the charged time frame when they

7    were 12 and 13 years old.

8            THE COURT:  Mr. Bonifaz, did you hear and

9    understand everything the government said?

10           THE DEFENDANT:  Yes, I do, Your Honor.

11           THE COURT:  2246.  Were you stationed at the Fort

12   Hamilton Army Base in 2009 and 2010?

13           THE DEFENDANT:  I was -- I was invited as a guest

14   by the mother at times.  Yes, Your Honor.

15           THE COURT:  Okay.  So you spent time at the Fort

16   Hamilton Army Base --

17           THE DEFENDANT:  Yes, I did, Your Honor.

18           THE COURT:  -- during that time period?  And do you

19   know who Ms. Demas is referring to when she uses the

20   expression Jane Doe 1?

21           THE DEFENDANT:  Yes, I do, Your Honor.

22           THE COURT:  Did you have oral sex with Jane Doe 1

23   during that time frame at the Fort Hamilton Army Base?

24           THE DEFENDANT:  Yes, I did, Your Honor.

25           THE COURT:  And was Jane Doe 1 between 12 and 16

50

1    years old at that time?

2              THE DEFENDANT:  Yes, she was, Your Honor.

3              THE COURT:  Were you over 20 years old at that

4    time?

5              THE DEFENDANT:  Yes, I was, Your Honor.

6              THE COURT:  Is there anything further the

7    government would have me inquire of the defendant?

8              MS. DEMAS:  Your Honor, just to be careful for

9    statutory purposes, I think it's covered by did you have oral

10   sex?  But because the statute says contact between the mouth

11   and the vulva, I would just like him to specifically say that

12   it was that type or the other type.  It doesn't matter which

13   one, but to specify.

14             THE COURT:  Did your mouth have contact with her

15   vulva?

16             THE DEFENDANT:  Yes, it did, Your Honor.

17             THE COURT:  Did her mouth have contact with your

18   penis?

19             THE DEFENDANT:  Yes, it did, Your Honor.

20             THE COURT:  Is there anything further?

21             MS. DEMAS:  We did discuss, Your Honor, the

22   persuasion element.  I'm not sure if the Court asked the

23   defendant about that or if that's covered by an earlier

24   discussion, but I just --

25             THE COURT:  I assumed it was covered by the --

1          MS. DEMAS:  Okay.

2          THE COURT:  -- earlier discussion of the age

3     difference.

4          MS. DEMAS:  Okay.

5          THE COURT:  Are you satisfied that the law is

6     satisfied by that?

7          MS. DEMAS:  I am.  But I would be more satisfied if

8     the defendant allocuted to persuading, because I think that

9     that's a word that he would probably agree with.  I think if

10    one says to another person, hey, let's do this --

11         THE COURT:  Was the sexual contact with Jane Doe

12    your idea?

13         THE DEFENDANT:  It was not, Your Honor.

14         THE COURT:  Okay.  Is the government satisfied with

15    the allocution?

16         MS. DEMAS:  Yes, Your Honor.

17         THE COURT:  Based on the information given to me

18    and accepting the representations of counsel that the age

19    difference is sufficient to satisfy the statutory element of

20    persuasion, I find that the defendant is acting voluntarily,

21    fully understands his rights and the consequences of his

22    plea, and that his plea has a factual basis.

23         And I, therefore, recommend that Judge Dearie

24    accept the defendant's plea of guilty to Count 1 of the

25    indictment.

1            I don't think I have a proposed sentencing -- yes,

2      I do.  Judge Dearie has scheduled the sentencing of this case

3      for July 31st at 10:00 a.m.  Between now and then, Mr.

4      Bonifaz, you're going to be interviewed by a probation

5      officer.

6            The probation officer is going to ask the questions

7      and conduct the investigation that's necessary to prepare the

8      pre-sentence report that I told you Judge Dearie will rely

9      upon when he decides what your sentence should be.

10            It's very important that you be candid and

11      cooperative with the probation officer during the interview.

12            THE DEFENDANT:  I understand, Your Honor.

13            THE COURT:  And if there are factual disputes,

14      there will be an evidentiary hearing, I imagine, that

15      attempts to resolve them.  Is there anything further from the

16      government?

17            MS. DEMAS:  No, Your Honor.  Thank you.

18            THE COURT:  Anything further from the defendant,

19      Mr. Greco?

20            MR. GRECO:  Nothing further from the defense,

21      Judge.

22            THE COURT:  Thank you, everybody.

23            MS. DEMAS:  Thank you, Your Honor.

24          (Proceedings concluded at 3:37 p.m.)

25

1       I, CHRISTINE FIORE, Certified Electronic Reporter and

2   Transcriber, certify that the foregoing is a correct

3   transcript from the official electronic sound recording of

4   the proceedings in the above-entitled matter.

5

6

7   _____        April 20, 2015

8   Christine Fiore, CERT